IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TERRY DeWITT CAVE,

       Plaintiff

  VS.

LT. CURRY, *et al.*

       Defendants

NO. 5:06-CV-275 (CAR)

PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE

## RECOMMENDATION

Plaintiff TERRY DeWITT CAVE filed the above-captioned suit in which he alleges that the named defendants, officials at Washington State Prison ("WSP"), were deliberately indifferent to his safety and well-being while he was incarcerated in that prison. Specifically, plaintiff Cave alleges that the defendants did not take adequate measures to protect him from his cellmate and that the defendants did not provide adequate treatment for his medical conditions. The defendants have filed a MOTION FOR SUMMARY JUDGMENT in which they claim that there are no significant factual disputes and that they are entitled to judgment as a matter of law Tab #30. Attached to the motion are a Statement of Undisputed Material Facts, a supporting brief, and a number of exhibits. Plaintiff Cave has responded to the defendants' motion, and submitted a number of exhibits on his own behalf. Tab #41.

**SUMMARY JUDGMENT STANDARD**

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); **Warrior Tombigbee Transportation Co. v. M/V Nan Fung***, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See **Van T. Junkins & Assoc. v. U.S. Industries, Inc.***, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. ***Hairston v. The Gainesville Sun Publishing Co.***, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. ***Welch v. Celotex Corp.***, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. ***Clark v. Coats & Clark, Inc***., 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1]

**FACTS**

The facts of the case are largely undisputed, and in the light most favorable to plaintiff Cave are as follows. Plaintiff Cave — a 45 year old man who weighed about 150 pounds as he was recovering from a drug abuse problem — was assigned to a cell with James Rozier — a nineteen year old inmate who was substantially larger than plaintiff Cave.[2] Cave described his rooming situation with Rozier — which lasted between three and four months — as "a marriage from hell, so to speak." Cave depo. at 13.

---

[1]*See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

[2]Though there is no evidence before the court as to Rozier's exact size, Rozier had told Cave that he had aspirations of being a running back in the National Football League. Deposition of Terry DeWitt Cave, Tab #31 at 14 (hereafter Cave depo. at __).

While Cave enjoyed his quiet time reading and sleeping, Rozier would be rapping or talking loudly with friends. On Friday October 14, 2005, at about two or three in the morning, Cave awakened to Rozier's shouting through the door of their cell to a night orderly.[3] The two cellmates had other squabbles, including disagreements over whether the cell door should be left open or closed and who should be the one to close the door.

After the October 14th incident, Cave talked to a number of guards and other officials, explaining the situation in an effort to obtain a transfer out of his room. He described to the officials that while his roommate had never physically threatened him, he was afraid that the situation could escalate at any moment and that he feared for his own safety if he and his roommate ever did get into an altercation. His request was denied so he asked to be transferred into protective custody. Cave even at one point took all of his possessions out of his cell and told the officials on duty that he refused to go back into a cell with Rozier. The officials responded by telling Cave that he would not be put in protective custody but instead would be given a disciplinary report if he was not in his cell when they called roll.

After hearing that Cave had spoken with prison officials regarding their rooming situation, Rozier threatened Cave.[4] Cave again told the guards of his situation and again asked to be moved. He was again denied. He then filed a grievance about his rooming arrangement which was denied a month later.

On Saturday, October 22, 2005, after Cave told Rozier to close the door behind him on his way out of the cell, Rozier became angry. Rozier began cursing at Cave (who was lying in his top bunk) and pulled him out of the bed. Cave fell to the floor, and broke his hand in the process. Rozier also kicked him a couple times "for good measure." Cave depo. at 25.

- 3 -

---

[3]According to Cave, the two man cells have "big steel heavy doors [so] you can't just converse. . . You've got to shout." Cave depo. at 11.

[4]Rozier said something to the effect of, "I'll give you something to bitch and cry about."

Although he was in pain, Cave did not realize that his hand was broken, and he did not go to the infirmary until the following morning. At medical, a nurse gave him a non-prescription painkiller, took him off of his duty, and gave him a cold compress to prevent swelling. Cave was seen by Dr. Rogers, the prison doctor and one of the defendants in this case, the following day. Dr. Rogers ordered an x-ray and continued the plaintiff on painkillers. The x-ray revealed that plaintiff's hand was broken, and Cave was sent to an orthopedic specialist, Dr. Leech. Dr. Leech took another set of x-rays and advised Cave that for the type of fracture he had, a cast was optional.

Cave opted to get the cast which was to stay on for three weeks, and he was continued on pain medication. When it came time to remove the cast, one doctor told the plaintiff that the bone had not healed correctly. Cave was then sent to another orthopedic specialist — Dr. Fulcher — who advised him that his hand was healing properly and continued him on painkillers.

All things told, Cave had some 13 doctor visits between the time of the accident on October 23rd through the following March 9th, and was seen by two specialists when the prison medical staff felt that Cave's medical problems might be too complicated for them to deal with adequately.

## DISCUSSION
### 1. Failure To Protect

> When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however. Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended evolving standards of decency, thereby rising to the level of a constitutional tort. The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference.

*Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990) (internal citations and punctuation omitted).

In order for an inmate to state a claim for Eighth Amendment relief, the defendant prison officials must act with "deliberate indifference," which includes both subjective and objective components: A substantial risk of injury must exist, and the defendant must be *actually* aware of that risk. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The fact that a defendant *should have been* aware of such a risk is not enough to be held liable under the Eighth Amendment. *Id.*

A prison official's action or inaction cannot be viewed with the benefit of hindsight, but conclusions must be based on what the officials actually knew at the time of their actions. Here, the defendant officials knew only that plaintiff Cave thought that trouble *might* be brewing in his cell; however, Cave had presented no evidence to them of any ***imminent*** threat to his well being.

While Cave has shown sufficient evidence that he feared for his safety, in order to recover under §1983, he must show that defendants believed that their unwillingness to transfer him into protective custody presented a substantial risk to his well-being. There is nothing in the record to indicate such knowledge on the part of the defendants.[5]

Moreover, even with the benefit of hindsight, the record is not clear that Rozier intended to do any more than *de minimis* damage to Cave: The plaintiff's testimony only shows that Rozier grabbed the plaintiff and pulled him out of his bunk and kicked him a couple of times. Those kicks resulted in bruises, but no lasting damage, and there is nothing to demonstrate that Rozier knew of any damage to Cave's hand before Rozier left the cell. This is not to say that Rozier was in any way justified in assaulting Cave, but if Rozier did not intend to do serious harm to the plaintiff, then the plaintiff was not actually at substantial risk of serious harm.

- 5 -

---

[5]The defendants' brief sets forth a good summary of what the officials could have believed:

> Essentially, [Cave] wanted a room change because his cellmate kept him up at night with various antics and when that did not work, he wrote a statement alleging that he was in fear for his safety with nothing to substantiate the claim.

Defendants' Brief in Support of Their Motion for Summary Judgment, Tab #30-3 at 12-13.

Because the plaintiff has failed to make a showing of a substantial risk of serious harm and of the defendants' awareness of such a risk, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT be **GRANTED** as to plaintiff's claims for failure to protect.[6]

## 2. Medical Care

The Eleventh Circuit has consistently held that lack of proper treatment for an inmate's medical problems can violate the Eighth Amendment but only when the treatment "is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). *Harris* clarifies that statement, saying that medical treatment for prisoners does not need to be "perfect, the best obtainable, or even very good." *Id.* at 1510. There is also a subjective component to an Eighth Amendment claim, which provides that those neglecting an inmate plaintiff's right to be free of cruel and unusual punishment must display "obduracy and wantonness, not inadvertence or error in good faith" in order to be held liable. *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

Plaintiff Cave has sued virtually everyone involved with the treatment he received for his broken hand. While there is evidence that the plaintiff's hand has not healed to his liking, there is nothing in the record to demonstrate that any of the medical personnel's actions violated the Constitution. Plaintiff was seen in medical the morning after he broke his hand, and the nurse prescribed pain-killers and a cold compress.

---

[6] A recommendation to grant the defendants' motion with respect to the defendant officers' alleged failure to protect necessarily precludes any claims against the warden and deputy warden for their fostering a culture where inmates are not given protective custody when it is necessary. It is noted, however, that dismissal of the warden and deputy warden is not recommended on the basis of *respondeat superior*.

The following morning, a doctor took an x-ray, provided what treatment he could, and sent the plaintiff to a specialist to have the break treated properly. That specialist then put the plaintiff's hand in a cast and followed up four weeks later. When it looked as though the plaintiff's hand might not have healed adequately, plaintiff was referred to a second specialist.

Evidence presented herein shows that this is a simply a case involving a disagreement in treatment or a dissatisfaction with the results of treatment. While in the "outside world," the plaintiff *may* have stated a case for medical malpractice, the actions presented to this court in this case clearly do not demonstrate deliberate indifference to Cave's medical needs. Accordingly, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT be **GRANTED** as to all claims regarding the medical care Cave received for his broken hand.

## INJUNCTIVE RELIEF

The plaintiff has sued the defendants for injunctive relief, but it has been well-established that "an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). The plaintiff is no longer confined at WSP, and IT IS THEREFORE RECOMMENDED that the plaintiff's claims for injunctive relief be **DENIED** as MOOT.

## GRIEVANCE PROCEDURE

To the extent that the plaintiff has filed suit based on any of the defendants' actions regarding the prison administrative grievance procedure, such claims are not cognizable under §1983, and IT IS RECOMMENDED that they be **DISMISSED**. *Wildberger v. Bracknell*, 869 F.2d 1467 (11th Cir. 1989).

**QUALIFIED IMMUNITY**

The defendants have asserted the defense of qualified immunity which shields public actors from suit unless their actions violate clearly established federal law. For the reasons set forth above, the defendants did not violate any clearly established federal rights or laws and they are entitled to qualified immunity as to the plaintiff's constitutional claims.

**CONCLUSION**

Accordingly, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT be **GRANTED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to these RECOMMENDATIONS with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO RECOMMENDED this 4th day of MARCH, 2008.



                                              CLAUDE W. HICKS, JR.
                                              UNITED STATES MAGISTRATE JUDGE